ACCEPTED
13-15-00004-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
9/11/2015 4:02:51 PM
Dorian E. Ramirez
CLERK

**Cause No. 13-15-00004-CR**

IN THE COURT OF APPEALS
FOR THE THIRTEENTH SUPREME JUDICIAL DISTRICT
AT CORPUS CHRISTI-EDINBURG, TEXAS

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
9/11/2015 4:02:51 PM
DORIAN E. RAMIREZ
Clerk

-------------------------------------------------------------------------------------------

**ALICIA DELGADO, APPELLANT**

**v.**

**THE STATE OF TEXAS, APPELLEE**

-------------------------------------------------------------------------------------------

APPEAL OF TRIAL COURT CAUSE NO. CR-3545-13-C
FROM THE 139TH DISTRICT COURT
HIDALGO COUNTY, TEXAS
The Honorable Roberto 'Bobby' Flores, Presiding

-------------------------------------------------------------------------------------------

**FIRST AMENDED BRIEF OF THE STATE OF TEXAS/APPELLEE**

-------------------------------------------------------------------------------------------

Ricardo Rodriguez, Jr.
Criminal District Attorney
Hidalgo County, Texas

Glenn W. Devino
State Bar No. 24012525
Lead Counsel for Appellee

Office of the Criminal District Attorney
100 N. Closner Blvd.
Edinburg TX 78539
Telephone 956-318-2300
Facsimile 956-380-0407
glenn.devino@da.co.hidalgo.tx.us

FOR THE STATE OF TEXAS, APPELLEE

## IDENTIFICATION OF PARTIES AND COUNSEL

Appellee certifies that the following is a complete list of the parties, attorneys, and all other interested persons regarding this matter:

**1.) The Appellant is:**
Alicia Delgado

**2.) Appellant was represented in the trial court by:**
Carlos A. Garcia, Esq.          1305 E. Griffin Parkway, Mission TX 78572
Johnathan Ball, Esq.          6521 N. Tenth St., suite F, McAllen TX 78504

**3.) Appellant is represented on appeal by:**
Johnathan Ball, Esq.          6521 N. Tenth St., suite F, McAllen TX 78504

**4.) The Appellee is:**
The State of Texas
by and through Ricardo Rodriguez, Jr., Hidalgo County Criminal District Attorney

**5.) Appellee was represented in the trial court by:**
Rene Guerra, Hidalgo County Criminal District Attorney[1]
100 N. Closner, 3rd floor, Edinburg TX 78539
by his Assistant Criminal District Attorneys Magdalena Hinojosa, Graciela Reyna and Orlando Esquivel

**6.) Appellee is represented on appeal by:**
Ricardo Rodriguez, Jr., Hidalgo County Criminal District Attorney
100 N. Closner, 3rd floor, Edinburg TX 78539
by his Assistant Criminal District Attorney Glenn W. Devino

---

[1] The term of office of Rene Guerra ended December 31, 2014.

## NOTE AS TO THE FORM OF CITATION

A.) Citation to the Clerk's Record will be to page number, *e.g.* CR47 refers to Page 47 of the Clerk's Record. Citation to the Supplemental Clerk's Record will be to page number, *e.g.* SCR5 refers to Page 5 of the Supplemental Clerk's Record.

B.) Citation to testimony in the Reporter's Record will be to volume and page number, *e.g.* 3RR56 refers to page 56 of volume 3 of the Reporter's Record.

C.) Citations to exhibits will be to volume and, *e.g.* 25RR State's Exhibit 1 refers to State's Exhibit 1 within volume 25 of the Reporter's Record.

**TABLE OF CONTENTS**

Title Page………………………………………………………………………...1

Identification of Parties and Counsel………………………………………….2

Note as to the Form of Citation………………………..……………...3

Table of Contents………………………………………………………...4

Index of Authorities…………………………………………………...5

Statement of the Case……………………………………………7

Issues Presented…………………………………………………......8

Statement of Facts…………………………………………………......9

Summary of Arguments…………………………………………….......28

Note as to Oral Argument……………………………………………29

Arguments and Authorities…………………………………………..30

Issue One:      Appellant is not entitled to reversal on her claims of error in the admission of challenged evidence …..…………………………...30

Conclusion………………………………………………………...47

Prayer…………………………………………………………...47

Certificate of Compliance…………………………………………48

Certificate of Service………………………………………………...48

# INDEX OF AUTHORITIES

**Cases**

Coble v. State, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010, *cert denied*)…32, 35,

……………………………………………………………..36, 38, 40, 41, 42, 43

Davis v. State, 329 S.W.3d 798 (Tex. Crim. App. 2010)……………………….30

De La Torre Olivares v. State, 1997 Tex. App. Lexis 3062 (Tex. App.—Corpus

Christi 1997, *no pet.*)(*memorandum opinion—not designated*

*for publication*)…………………………………………………...35

Gallo v. State, 239 S.W.3d 757 (Tex. Crim. App. 2007, *cert. denied*)…………..47

Greene v. State, 287 S.W.3d 277 (Tex. App.--Eastland. 2009, *pet. ref'd*)………..44

Hodge v. State, 940 S.W.2d 316 (Tex. App.—Eastland 1997, *pet. ref'd*)………..45

Johnson v. State,967 S.W.2d 410 (Tex. Crim. App. 1998).31, 36, 38, 40, 41, 42, 43

Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002)…….36, 38, 40, 41, 42, 43

Pondexter v. State, 942 S.W.2d 577 (Tex. Crim. App. 1996, *cert. denied*)………43

Saenz v. State, 2009 Tex. App. Lexis 2254 (Tex. App.—Corpus Christi 2009, *no*

*pet.*)……………………………………………………………….46

Smith v. State, 5 S.W.3d 673 (Tex. Crim. App. 1999)…. …………………..31fn23

Smith v. State, 2014 Tex. App. Lexis 13705 (Tex. App.—San Antonio 2014, *no*

*pet.*)(*memorandum opinion—not designated for publication*)…………...46

Trevino v. State, 228 S.W.3d 729 (Tex. App.—Corpus Christi 2006, *pet. ref'd*)...30

Wyatt v. State, 23 S.W.3d 18 (Tex. Crim. App'. 2000, *cert. denied*)……………44

**Statutes**

Tex. Code Crim. P. Art. 38.36……………………….30, 33, 34, 35, 36, 37, 39, 40, 41

**Rules**

Tex. R. App. P. 44.2……………………………………………31, 36, 38, 40, 41, 42, 43

Tex. R. Evid. 401……………………………………………………………...31, 46

Tex. R. Evid. 403…………………………………………………………….31, 31fn23, 46

Tex. R. Evid. 404…………………………………………………………….31fn23, 46

## STATEMENT OF THE CASE

Appellant was charged by Indictment with the offense of Murder, in an Indictment alleging three distinct manners and means. CR7. The jury rendered verdict of guilt as to Manslaughter as a lesser offense. CR159, 12RR12-13.

Appellant initially elected to have punishment fixed by the jury in the event of conviction; however, with the consent of the State, Appellant changed her election. The trial court imposed sentence of ten years' imprisonment. CR53; CR116; CR226; 13RR80.

Appellant did not file a motion for new trial. Appellant timely filed Notice of Appeal. CR231.

Pertinent to issues on appeal are the following pleadings of the defense:

*Defendant's Request for Notice of State's Intention to Introduce Evidence of Other Crimes, Wrongs or Acts Pursuant to Texas Rules of Evidence 404(b)*. CR30.

*Defendant's Motion to Exclude Any Suggestion, Questioning and/or Argument by the State that Defendant Failed to Call the Police and/or Call for Medical Assistance for the Deceased After the Fight Between the Defendant and the Deceased Occurred*. CR90.

*Defendant's Motion to Exclude Testimony of Zulema Rose Delgado, Diana Vasquez, Ruby Lee Olguin*. CR118.

The trial court did not render any written order on any of the referenced motions.

# ISSUES PRESENTED

**<u>Issue One:</u>**

Appellant is not entitled to reversal on her claims of error in the admission of challenged evidence.

## STATEMENT OF FACTS[2]

A. Adjudicative facts[3]

Officers were dispatched to the home of Appellant's father in response to an 'assault' report. 10RR46-47. The home appeared as if a struggle had taken place in multiple rooms. 10RR54; 169, 231-232; State's Exhibit 15[4]. Upon initial contact with officers, "She (Appellant) told me that she had been assaulted by her father (the decedent). Her father had been drinking and he approached her while she was in the kitchen." 10RR48. Appellant also told the officer that "[s]he went out through the back door, she started yelling for aid. Then she went back in and closed the door behind her." 10RR55. Appellant had bruises on her face, which appeared to be fresh. 10RR48. Appellant advised the initial officer that she did not wish to pursue criminal charges. 10RR51.

The victim, Rudy Delgado, who was Appellant's father, was alive upon the officer's arrival. 10RR49. He was found lying on a bedroom floor, wearing only a

---

[2] Physical objects admitted into evidence are not within the bound volumes of the Reporter's Record.

[3] As Appellant does not challenge the sufficiency of the evidence, this subsection is intended as an overview of the facts of the offense rather than a summary of all evidence supporting the verdict of guilt.

[4] This exhibit, a video recording depicting the scene of the offense, is not within the bound volumes of the Reporter's Record. The investigator's testimony regarding the making of this recording and essentially narrating the video is in the record at 10RR80-94.

pair of shorts. 10RR49. The first responding officer described the victim's appearance as follows: "He also had small cuts on his face, massive swelling to the left eye and the right eye, bruising. He was bleeding. He had blood all over his face…He was also bleeding from the back of the head. Like I said, he had sustained severe injuries to his face." 10RR49-50. The injuries the victim sustained appeared substantially more significant than those of Appellant.[5] 10RR63. Appellant offered a different explanation as to the origin of his injuries, telling an officer repeatedly that "[h]e fell down and he told me nobody assaulted him and he just wanted to go to the hospital…He didn't want to cooperate (with the investigation)."[6] 10RR50, 64. The victim was unable to explain the origin of an injury to his leg. *Id.* He emitted a strong odor of alcohol. 10RR59.

Appellant's recorded statement was admitted into evidence without objection. 10RR182; State's Exhibit 52.[7] Therein, Appellant avers that it was the victim who

---

[5] The victim's injuries are depicted in the following exhibits, among others: 16RR State's Exhibits 3, 4, 79, 80, 82. A photograph of Appellant depicting Appellant's appearance immediately after the killing is in the record at 16RR State's Exhibits 54. 10RR61-62.

[6] The victim's widow testified at sentencing as to her belief that the victim misled officers to protect Appellant: "No, I think he was saying, like – he never thought he was going to die, you know. He thought he was going to be, again, okay, like – like I tell you that's he's been in the hospital for nine or ten times and he makes it, you know." 12RR20.

[7] This exhibit, a recording of Appellant's statement, is not within the bound volumes of the Reporter's Record; the recording was played for the jury, the memorialization of which is in the record at 10RR183-208. Although the recording was stopped before reaching the conclusion of

10

struck the first blow, after Appellant taunted him, "Hit me then, you hear me? Because I've been hit before by men…" 10RR190-191. According to Appellant, her son (the victim's grandson) was, during this melee, saying, "Get off of her. Get off of – Grandpa, get off my mom. Get off my mom" and then struck the victim. 10RR191. Appellant goes on to assert that "[h]e got me outside or I ran outside, and then he was coming like following me to really get me. And I was able to run back into the house, so I locked the doors so I didn't think he was going to break the windows to come in and still get me."[8] 10RR192. Appellant concedes having stomped, kicked and hit her father while he was on the floor, and admits that she continued this attack even though the victim had been rendered helpless and unable to fight back. 10RR193-199. The victim's wife, Zulema Delgado, testified as to the victim being physically debilitated due to a series of strokes and several motorcycle accidents. 10RR283-290. As a result of the strokes, the victim experienced weakness and tremors; as a result of the crashes, the victim limped and experienced pain in the legs.[9] 10RR295-296. Appellant herself said, about the

---

[8] The victim was determined to be the source of blood found on the frame of this broken window. 10RR153, 233.

[9] The defense adduced testimony that the victim continued to ride a motorcycle and engage in other physical activities despite these infirmities. 10RR319; 11RR28, 50-52. The victim's brother testified that the victim had strength adequate to defend himself. 11RR56.

the recorded interview, the parties elected, after discussion, to not play the remainder of the recording for the jury. 10RR208-214.

11

victim, "He's real slow. And he gets real tired easily. He – He'll do work around the house and then he'll, for like, 15, 20 minutes he will go in the room and he takes his breaks." 10RR201-202; State's Exhibit 52.

The interviewing investigator authorized the release of Appellant at the conclusion of this first interrogation; upon receiving information that the pathologist who performed the autopsy discovered injuries to the victim's neck, however, the investigator "[t]alked to her and asked her if she had hit him or kicked him on the head which she replied that she had done." 10RR216-217. Appellant was then released, and a warrant for her arrest was issued after issuance by the pathologist of the autopsy report more than two weeks after the victim's death. 10RR221-224.

An injury diagram prepared by the pathologist who performed the victim's autopsy memorializes numerous and extensive injuries over virtually the entirety of the victim's body, both front and back.[10] 11RR117; 14RR State's Exhibit 104. The cause of the victim's death was determined to be 'complication from blunt-force abdominal trauma.' 16RR State's Exhibit 78. The abdominal injuries, while conceivably having resulted from a punch, more likely were the product of "a kick or a stomp." 11RR120.

---

[10] Some of the bruising apparently resulted from resuscitation efforts; the cuts on the legs were surgical incisions made to allow bloodflow. 11RR98, 109-113.

12

B. Testimony subject of Appellant's claims

The trial court and the parties, at one of the several pretrial hearings, took up certain motions of the defense seeking to preclude inquiry and testimony in specified areas. 8RR5-9; CR90, 96, 100, 104, 118. The State acquiesced in grant of Appellant's motions to bar reference to the decedent in the case as the 'victim' and to bar reference to or mention of any prior involvement of Appellant in trafficking narcotics; and stipulated that the prosecution would not offer into evidence a certain letter discovered in Appellant's home. 8RR5-6. None of the proposed written orders submitted to the trial court were rendered.

In proceedings outside the presence of the jury, the trial court explained its admission of certain challenged testimony. 11RR80.

Evidence subject of Appellant's first Issue

Outside the presence of the jury, the parties and the Court discussed the permissible parameters of the testimony of Zulema Delgado, the victim's widow. 10RR270 – 273. Before this discussion, however, Appellant herself offered into evidence and secured admission of the victim's medical/psychiatric records[11],

_____

[11] The compact discs containing the medical/psychiatric records of various institutions regarding the victim were admitted as Defense Exhibits 45, 46, 47. 10RR226-227. These records were later reduced to printed form, and are in volumes 16-21 of the Reporter's Record. The discussion

13

10RR226-227; within the records, particularly as set forth in pages 18 – 23 of Defense Exhibit 48, is documentation of the ongoing conflict between the Zulema Delgado and Appellant. Appellant's counsel apprised the trial court as to his intent vis-à-vis evidence of the relationship between Zulema Delgado and Appellant:

> The medical records, the psychiatric records that were admitted (*note: in the first trial of the case, which ended by mistrial*). That I had shown in my closing the last time saying that Rudy tells his psychiatrist 'my wife hates my daughter, or my wife hates my granddaughter and treats her like a maid.' Just basically says things that are unkind about her. All I want to do is be able to use those documents to say, 'Do you recall Rudy saying this? Did Rudy ever say this? Is it true?' I'm not going to ask her medical opinions, anything like that, but I don't want -- .[12]
> 10RR271.

During Appellant's case-in-chief, a defense witness testified in cross-examination, without objection, that Appellant's medical records reflected that "[t]here were some conflicts with his second wife and his second wife didn't like having another family move in."[13] 11RR209.

---

of this procedure of offering into evidence the printed form of the records previously admitted in electronic form is memorialized in the record at 11RR81-83.

[12] During this discussion, the prosecutor indicated the State would not object to such questions "since the records are already in." 10RR272. When during the testimony of Zulema Delgado the prosecutor began posing questions as to intra-family relationships, Appellant sought and obtained a running objection to 'this line of questioning' without further elaboration. 10RR278.

[13] As noted elsewhere, Appellant's two children moved with her into her father's home.

The testimony that is apparently the subject of Appellant's complaints in this Issue developed as follows:

> The prosecutor:    Now, when Alicia got there (to take up residence in the home of Zulema Delgado and the victim), did you get along with her?
>
> The witness (Zulema Delgado):    At first, yes, because she was always being nice with me, calling – she even called me 'mom.' The kids called me 'grandma' and they were doing okay.
>
> The prosecutor:    Okay. When was it that you all started to not get along?
>
> The witness:    When she started calling me 'B' and 'F.' I told her to talk to my husband.
>
> The prosecutor:    Can you say those words? What do you mean by 'B' and what do you mean by 'F'?
>
> …
>
> The witness:    She called me a fucking bitch….And then she didn't – she didn't let the kids talk to me no more…I got scared of her, you know….The way she yelled. The way she talks to me.
> 10RR299-301.

This witness testified that she herself moved from the home because of the ongoing conflict between her and Appellant. 10RR301-302. Within Appellant's medical records was the notation that, "His wife left home because she wants her stepdaughter (Appellant) out of the house…He is still supporting his daughter (Appellant) in this situation." 11RR218; 16RR Defense Exhibit 48 page 23.

15

After the third question in the colloquy set forth above, Appellant's counsel interjected to raise objection on grounds of relevance. 10RR299. The trial judge overruled the objection, advising the prosecutor "I'm going to give you a little bit of leeway…" and granted Appellant a running objection to the testimony. 10RR300. Ultimately, a further objection was sustained before the witness could proffer a complete explanation of the circumstances prompting her to move from the home; the prosecutor did not pursue this line of inquiry further. 10RR303-304. In cross-examination, despite his previous objection as to this area of questioning, Appellant posed numerous questions to Zulema Delgado regarding the nature and tenor of the relationship between the two. 10RR320-321.

Evidence subject of Appellant's second Issue

Two days after the killing, Zulema Delgado and her daughter-in-law went to the home to clean up. 10RR314-315. The following testimony was admitted without objection:

> The witness (Zulema Delgado): And by the time I got there, she (Appellant) was there with some friends…
>
> As I understand it that she says she was going to clean up the house because it was her father's.
>
> (Appellant was ejected from the property by the police) [b]ecause she said that she was going to stay there because it was her father's house and that I was – that – that she said 'That bitch has to

16

get out of here because it's my father's house.' And the police said, 'This is his wife. This lady is married to him. This lady has a marriage license. She has every proof of the house and everything else.' And she got mad, but the police had to tell them to leave.

10RR315-316.

This witness then testified that certain property was missing from the residence, including a collection of compact discs, a motorcycle helmet, a lamp, a bag of clothing, and his motorcycle. 10RR316. The motorcycle had been there the day before. *Id.* When the prosecutor posed a question as to what had become of the motorcycle, Appellant, through her counsel, then raised objection on grounds of relevance. *Id.* The trial court made no express ruling on this objection, but granted Appellant a running objection to such testimony. *Id.* at 317. According to the witness, "she (Appellant) called a friend of hers to come pick it up and take it away because it was hers…The police told her to tell them where was the motorcycle and she get them the address and they went to pick it up. My son went to pick it up and drove it to the house." *Id*.


Evidence subject of Appellant's third Issue

Francisco Nuno, Appellant's friend, testified without objection that he had never seen the victim exhibit violence toward Appellant's children: "No, not violent like hitting." 11RR23.

17

<u>Evidence subject of Appellant's fourth Issue</u>

Ruby Olguin, half-sister of Appellant, testified without objection that "No, we didn't get along" in response to a question regarding her relationship with Appellant. 11RR60. Only upon inquiry as to the cause of this discord did Appellant object; the asserted ground of objection was a claim that "(Appellant's) relationship to Ms. Olguin is not relevant." *Id.* The Court granted a running objection to such questions and testimony after Appellant's initial objection. *Id.* Olguin then testified as to apparent jealousy/sibling rivalry as to the relationship she and Appellant had with the victim. *Id.* at 61-63.

<u>Evidence subject of Appellant's fifth Issue</u>[14]

In his case-in-chief, Appellant adduced testimony from her mother, who formerly was married to the victim, that she supported Appellant's decision to relocate to the Rio Grande Valley to be with her father, and "[H]e (the victim) was very happy that she decided to be with him."[15] 11RR162-163. Although this witness claimed to have been abused by the victim, when asked "Did you ever witness him being abusive with his children, with either Alicia or Rudy, Jr.,", the witness responded,

---

[14] Appellant herself conceded that evidence of "[H]er (Appellant's) relationship with her dad may have been (relevant)." 11RR81.

[15] At the time of Appellant's return to Texas, the victim had not seen her for the previous two decades. 11RR209; 16RR Defense Exhibit 48 page 79.

18

"Never. Never. He loved his kids." 11RR166. She further testified that the victim was a supportive father to Appellant after Appellant's return to live with the victim. 11RR168. Appellant never conveyed to her mother that the victim had ever become violent to her or mistreated her children in any way. [16] 11RR168-169.

Ruby Olguin testified as to the victim's sense of duty to Appellant: "He felt like he was obligated because he hadn't been there all her life, that he owed it to her to try to get along with her, try to get to know who she was because she hadn't been in his life…" 11RR65.

When Olguin began to testify regarding Appellant's treatment of and toward their father, the victim, Appellant objected on relevance grounds.[17] 11RR75-76. The trial court granted Appellant's request for a running objection to such evidence. *Id.* at 76. Within the exchange between Olguin and the prosecutor, the following testimony was adduced:

> The prosecutor: What were the things that – that you witnessed yourself in how Alicia Delgado treated her dad Rudy?
>
> The witness: A lot of foul language, disrespect. I had never heard anybody talk to him like that…

---

[16] This testimony was admitted without objection.

[17] Appellant also cited to '403' in articulating his objection, but did not elaborate as to how the application of that rule would support a ruling denying admission of the challenged testimony.

Profanity. That he didn't have the balls to stand up, you know, to my mom. He didn't have – he didn't have the balls for him to act like a man up to, you know, tell us things for him…A lot of times she would call him, 'quit being a faggot. Have the balls. You're a man. You should be able to control your bitch.'

11RR76-77.

The victim never reacted in a violent manner to these tirades. *Id.* at 77. "He was mostly – he would walk away and cry because he was hurt." *Id.*

Appellant exerted such apparent control over her father, the victim, that he instructed his medical-care team to delete from the 'next of kin' listings in his records the names of his wife and of Ruby Olguin, and to replace those contacts with the name and contact information for Appellant. 11RR213; 16RR Defense Exhibit 48 page 72.

Evidence subject of Appellant's sixth Issue

Numerous 'Facebook' social media website page printouts were admitted into evidence. 11RR67-68; 14RR State's Exhibits 72-77. Appellant raised no objection to the admission of State's Exhibits 73 and 76; as to the other proffered exhibits, Appellant, in addition to claiming lack of proper predicate, cited in his objections Rule 401 and Rule 403, Tex. R. Evid. 11RR66. Appellant did not elaborate as to

how application of the referenced evidentiary rules would militate for refusing to admit the exhibits into evidence.

In none of these Facebook 'posts' does Appellant disparage or make any threat against the victim or any other person. To the contrary, the thrust of Appellant's comments through the various 'posts' is her longing to reunite with her father and that Appellant decided to return in order to 'lead him (her father, the victim) to the Lord.' 14RR State's Exhibits 72-77.

Evidence subject of Appellant's seventh Issue

As to the motion of Appellant seeking exclusion of evidence regarding the failure of Appellant to promptly seek medical attention or other assistance following the infliction of the injuries that killed him, the following exchange between the parties and the trial court transpired:

Johnathan Ball (counsel for Appellant in trial and on appeal): And the last one [*note: motion urged by the defense at this hearing*], Judge, which was – that I had previously was part of the State's case was that they were referring to the fact that the, or their allegation is that the Defendant did not call EMS[18] in a timely and proper manner. And we're asking that they not be able to discuss calling EMS or

---

[18] A reference to 'emergency medical services.'

referring to that as some sort of bad act because they presented that as a bad act and it formed the basis -- .

The trial court:     It is what it is, Mr. Ball. I mean, you can't prevent them from saying that a lot of time passed. I mean, it's in the rules.

The prosecutor:     It's part of the facts, Your Honor.

The trial court:     It's part of the facts, I mean.

Johnathan Ball:     I disagree. Because what happened, Judge, is that they charged her with First-Degree Murder with doing an act that was clearly dangerous to human life by kicking, stomping and punching. There is no mention in the indictment whatsoever that she was negligent or reckless in any way that had to do with failing to call --.

The trial court:     You, as well as I, know that you don't have to allege everything in the indictment. I mean, that would be ludicrous from them to allege everything that they – they are going to introduce. It makes no sense.

Johnathan Ball:     I agree there, Judge.

The trial court:     It's not – it's just part of the circumstances surrounding the alleged killing.

Johnathan Ball:     The problem, though, Judge, is that it is something that occurred after. And they want to bring in evidence of things that occurred after the fight occurred, the actions they're charging her with they said are what caused this man's death.

So what they're saying is 'we're going to bring in those bad acts of the kicking and the punching, and then we are going to

continue to run the timelines and we're going to say that she also contributed to his death by not calling EMS.'

That wasn't alleged in the indictment, though, so there is a separate and distinct charge that they're trying to bring in which is a recklessness or a negligence.

The trial court:    I disagree completely on that.

Johnathan Ball:    Okay.

The trial court:    I completely disagree. I'm going to deny that.

8RR6-8

The trial court granted Appellant's request for a 'running objection' to such evidence. 8RR8. When in opening remarks the prosecutor began describing the condition of the decedent after the attack, Appellant's trial counsel renewed his objection that "[a]nything that involves circumstances that occurred after the fight are irrelevant"; the trial court overruled this objection and again granted Appellant's request for a 'running objection' to such evidence. 10RR23.

At midnight or so on the night of the killing, Appellant placed a telephone call to Francisco Nuno, a close friend of Appellant. 11RR9-11, 146-147. This witness overheard the victim asking for help to get up. 11RR15. Appellant instead berated her father and made comments akin to, "Oh, now I'm 'mija' or now I'm your daughter after you hit me. Now you want me to help you." 11RR16-17. Nuno advised Appellant to call the authorities; however, as set forth below, she did not

23

immediately heed this advice. 11RR18. During this 20-minute conversation, Nuno could hear that the victim was still alive. *Id.* Concerned for Appellant's well-being, Nuno cut short his South Padre Island visit and returned, and picked up Appellant. *Id*.

A recording of the 911 emergency call made by Appellant at approximately 1:00 a.m., an hour after her call to Nuno, was admitted into evidence. 10RR172, 175; 11RR41; State's Exhibit 71.[19,20.] Appellant placed this call from the home of her uncle, Francisco Delgado, who was the victim's brother and who lived near the victim. 11RR41-43. The following are excerpts from this conversation:

> The dispatcher:     Okay. Tell me what happened, ma'am?
>
> Appellant:   My dad has been drinking and he – he started hitting me and I fought back and he tried – so then he needs medical attention.
>
> The dispatcher:     He fell down or what happened to him?
>
> Appellant:    No, my dad, he punched me first and then I kicked. He tried socking me and I got up and started fighting back.
>
> …

---

[19] This exhibit, an audio recording depicting the scene of the offense, is not within the bound volumes of the Reporter's Record. This recording was played in the presence of the jury; the memorialization thereof is in the record at 10RR172-175.

[20] When the State offered this recording into evidence, the only objection to admission raised by Appellant was "[t]he proper predicate has not been laid for its admission'; the trial court admitted the exhibit over objection. 10RR172. As the Court later explained, Appellant did not, at the time of the offer of this exhibit, raise any objection on a confrontation ground. 11RR80.

24

Appellant: But he needs medical attention because he told me he needs it. My dad has all kinds of health problems.

…

The dispatcher: Okay. When did this happen?

Appellant: Like two hours ago.

10RR173-175.

In her statement, Appellant recounts the following as to the actions she claims to have taken at the conclusion of the physical altercation:

He – I went and called the cops. That's when I went and came back, you know, 'mija' help me. I said, 'Why did you do this, Dad? Why?' He says, 'I can't feel my legs. I can't feel my legs.'[21] I was like, 'Oh, my God. All right, Dad.' I'm trying to help pick him up because we were outside in the area. I couldn't lift him. I was dragging and pulling him underneath like underneath here and pulling him and then I see him – I pulled him into my room and I seen his face bleeding. So I grabbed a towel, a rag to wipe his face, and I grabbed a frozen fruit, a frozen vegetable to put on his eye.

10RR198.

---

[21] The pathologist who performed the victim's autopsy testified that this lack of feeling in the legs was most probably caused by lack of blood flow which resulted from the dislodging and movement of existing blood clots from the abdomen to vessels which supply blood to the legs when the victim was struck or kicked in the abdomen. 11RR122-123, 141

C. Closing argument

The greater portion of the State's closing argument was dedicated to addressing Appellant's claim that her actions were in self-defense.

The prosecutor commented in closing argument that the victim "[l]oved and adored his daughter. He loved, adored her, adored his grandkids. He loved her so much that he gave up the last 20 years of his life because he felt he owed it to his daughter." 11RR253. As to the delay between the deadly altercation and the 911 call, the prosecutor commented as follows:

> They (the dispatcher) asked her (Appellant), "How long has he been down?". She herself says, "Two hours."

> Now, ask yourself, why did she wait two hours? What was the purpose of waiting for two hours? Before, when he was suicidal back on January 2013, she called for an emergency for him right away when he was suicidal. Why didn't she call emergency this time? He was down on the floor, couldn't feel his legs and was in pain. What was the reason for her waiting two hours?

> I will tell you what the reason was. She was trying to figure out what she was going to say. What kind of defense she was going to say. 11RR273-274.

26

The prosecutor then noted Appellant's failure to promptly heed Nuno's advice to call 911 for assistance; and then later again referenced the two-hour delay between the altercation and seeking emergency help. 11RR275, 277, 279.

## SUMMARY OF ARGUMENTS

The trial court did not err in the evidentiary rulings subject of Appellant's complaints. Evidence regarding the relationships between and among various members of the victim's family was properly admitted as going Appellant's state of mind. One of Appellant's complaints is waived because Appellant herself offered into evidence records documenting the matters regarding which Appellant contends the trial court should not have admitted testimony. Evidence of Appellant's two-hour delay in summoning assistance for the victim was properly admitted as same-transaction evidence, and no notice of intent to introduce is required as to such evidence. It was perfectly proper for the prosecution to make reference to the admitted evidence in closing argument.

As all of Appellant's claims rest solely on grounds of alleged violation of evidentiary rules only, any error in admission of the challenged evidence must be disregarded unless it is found to have had an adverse impact on her substantial rights. Appellant does not, as to any of her claims, make a showing of entitlement to reversal.

## NOTE AS TO ORAL ARGUMENT

Appellant has requested oral argument. The State of Texas respectfully submits that oral argument in the case at bar would not serve to enlighten the Court further or illuminate the issues in that, because the facts and legal arguments are adequately presented in the briefs and record, the decisional process of the Court would not be significantly aided by oral argument. The State of Texas, therefore, respectfully submits that oral argument in the instant case is not necessary and that the request for oral argument should be denied.

The State of Texas reserves the right to present oral argument should the Court grant the request of Appellant for oral argument.

## ARGUMENTS AND AUTHORITIES

**Issue One:** Appellant is not entitled to reversal on her claims of error in the admission of challenged evidence. [22]

**Argument:**

   A. General principles

The decision of a trial court regarding admission of evidence is reviewed on an 'abuse of discretion' standard. *See, e.g.* Davis v. State, 329 S.W.3d 798 (Tex. Crim. App. 2010). "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone of reasonable disagreement within which reasonable persons might disagree." Trevino v. State, 228 S.W.3d 729, 734 (Tex. App.—Corpus Christi 2006, *pet. ref'd*).

Tex. Code Crim. P. Art. 38.36(a) provides that:

> In all prosecutions for murder, the state or the defendant shall be permitted to offer testimony as to all relevant facts and circumstances surrounding the killing and the previous relationship existing between the accused and the deceased, together with all relevant facts and

---

[22] As all of Appellant's claims relate to admission of evidence, the State of Texas will herein address all of Appellant's stated Issues in this single responsive Issue.

The various claims of Appellant are not addressed in the precise order they are set forth in her Brief.

circumstances going to show the condition of the mind of the accused at the time of the offense.[23]

Even if error in evidentiary rulings subject of Appellant's complaints is found, this alone, without more, does not establish entitlement to reversal. All of Appellant's complaints rest solely on claims that the trial court should have denied admission of the challenged evidence pursuant to certain evidentiary rules including but not necessarily limited to Rule 401 and Rule 403, Texas Rules of Evidence; Appellant's claims in no way implicate any constitutional right. Error in admission of evidence in violation of an evidentiary rule is non-constitutional in nature; thus, it must be disregarded unless the substantial rights of the accused are thereby adversely affected. Johnson v. State, 967 S.W.2d 410 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b). As the Court of Criminal Appeals has explained:

> A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. But if the improperly admitted evidence did not influence the jury or had but a slight effect upon its deliberations, such non-constitutional error is harmless. In making a harm analysis, we examine the entire trial

---

[23] Evidence admissible under this section may nevertheless be excluded under evidentiary rules prohibiting admission of evidence for the purpose of showing conformity with character and permitting exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, if it is cumulative, or if its admission would cause undue delay. Smith v. State, 5 S.W.3d 673 (Tex. Crim. App. 1999); Tex. R. Evid. 403, 404(b).

record and calculate, as much as possible, the probable impact of the error upon the rest of the evidence.

Coble v. State, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010, *cert denied*).

In its opinion on another case, the Court of Criminal Appeals set out the proper approach to and considerations in determining such claims:

> In assessing the likelihood that the jury's decision was adversely affected by the error, the appellate court should consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. The reviewing court may also consider the jury instructions, the State's theory and any defensive theories, closing arguments and even voir dire, if applicable. We have also recognized that whether the State emphasized the error can be a factor.
>
> Motilla v. State, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002)(footnotes omitted)

B. Relationship evidence in general (Appellant's issues 1, 3, 4, 5 and 6)[24]

Among other complaints, Appellant contends that the trial court erred in its admission of evidence as to the following[25]:

- The relationship between Appellant and her stepmother, wife of the victim (Appellant's Issue 1)
- The relationship between the victim and Appellant's children (Appellant's Issue 3)
- The relationship between Appellant and her step-sister (Appellant's Issue 4)
- The relationship between Appellant and victim (Appellant's Issue 5)
- 'Facebook' posts by Appellant expressing affection for the victim (Appellant's Issue 6)

Art. 38.36, Tex. Code Crim. P. not only permits evidence as to the relationship between accused and victim, but also evidence showing the state of mind of the accused. The actions of Appellant essentially taking over all aspects of the victim's care, driving a wedge between him and his wife, and making her stepmother's home life so intolerable that the woman actually moved away from her own husband demonstrate an intent to ensure that Appellant alone had access to and

---

[24] The general discussion in this Subsection B addresses legal principles concerning determination of error as to the claims raised in Appellant's Issues 1, 3, 4, 5, and 6. Each of these Issues is addressed individually below.

[25] The discussion in this subsection addresses the issues, as framed by Appellant, which are properly categorized as involving claims connected with evidence of the relationships between and among various people associated with the case.

33

control over her father. 10RR299-302; 11RR213, 218; 16RR Defense Exhibit 48 pp.'s 23, 72. Although no direct evidence was adduced as to the exchange or actions that precipitated the altercation that ended in the victim's death[26], it was reasonable for a jury to infer that it may well have been initiated upon the victim's indication of refusal to tolerate any longer the vile language and insults directed at him and members of his family by Appellant or his rejection of Appellant's ongoing campaign to isolate him from every other member of his family.

1.) Evidence regarding the relationship between Appellant and the victim's wife (Appellant's Issue 1)

Appellant centers this complaint on the testimony of Zulema Delgado, widow of the victim, as to Appellant's treatment of and attitude toward her.

The trial court did not err in its ruling admitting the challenged evidence because the evidence fell within the parameters of Art. 38.36 in that it went, albeit indirectly, to the relationship between accused and victim; the nature of a relationship between a person's daughter and the person's wife necessarily affects the relationship between the person and his daughter. This, in turn, goes to

_____

[26] Appellant, through her statement to authorities, said merely that, "So while we were talking, I don't know what triggered my dad." 10RR190; State's Exhibit 52.

showing the state of mind of the accused. Such evidence is properly admitted pursuant to the 'previous relationship' and 'condition of mind' provisions of Art. 38.36.

Appellant overlooks the fact that, well before this witness was summoned to the stand, Appellant herself secured the admission into evidence of medical records of the victim which documented the existence of the ongoing conflict between Appellant and this witness. 10RR226-227; 16RR Defense Exhibit 48 pp.'s 18-23. The testimony of Zulema Delgado in this regard was substantively identical to the notations in the records sponsored by the defense. In essence, this testimony did nothing more than put before the jury in oral form evidence that had already been admitted in written form. In <u>Coble</u>, the Court of Criminal Appeals stated, "We often held that erroneously admitting evidence 'will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.'" (*quoting* <u>Leday v. State</u>, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998)). Moreover, "When a defendant offers the same testimony as that objected to, or the same evidence is introduced from another source, without objection, the defendant is not in position to complain on appeal." <u>Womble v. State</u>, 618 S.W.2d 59, 62 (Tex. Crim. App. 1981); *accord* <u>De La Torre Olivares v.</u>

State, 1997 Tex. App. Lexis 3062 (Tex. App.—Corpus Christi 1997, *no pet.*)(*memorandum opinion—not designated for publication*).

Notwithstanding that Appellant herself sponsored documentary evidence of the areas of testimony of which she now complains, noting again that this offer of records was made *before* the testimony subject of her complaint was adduced, and likewise notwithstanding the admissibility thereof under Art. 38.36, Appellant in any event cannot make the showing of harm required to warrant reversal assuming *arguendo* error by the trial court as claimed. As discussed above, the entirety of the record is to be considered in conducting harm analysis. Coble, 330 S.W.3d 253. Given Appellant's own admission that she struck, stomped and kicked the victim while he lay helpless on the floor, it is clear that the 'prior relationship' testimony had no appreciable effect on the jury in its deliberations. 10RR193-196, 207; State's Exhibit 52. Even erroneous admission of such testimony would have had no adverse affect on Appellant's substantial rights; thus, Appellant is not in any event entitled to reversal on this claim. *See*, Coble, 330 S.W.3d 253; Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002); Johnson v. State, 967 S.W.2d 410 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b).

2.) Testimony regarding the relationship between the victim and Appellant's children (Appellant's Issue 3)

The trial court did not err in its ruling admitting the challenged evidence because the evidence fell within the parameters of Art. 38.36 in that it went, albeit indirectly, to the relationship between accused and victim; the nature of a relationship between a person's daughter and the children of his daughter necessarily affects the relationship between the person and his daughter. Restated, the relationship between a man and his grandchildren necessarily affects the relationship between the man and the mother of those grandchildren. Such evidence is properly admitted pursuant to the 'previous relationship' and 'condition of mind' provisions of Art. 38.36.

Should error be found, reversal is nonetheless not warranted. Appellant makes no showing that this evidence had more than a *de minimis* effect on the jury's deliberations, if it indeed had any effect at all. The testimony about the victim's relationship with Appellant's children was extremely brief. The passage of testimony excerpted by Appellant in her Brief extends over only four lines of the trial transcript.[27] The testimony from another witness regarding this issue is

---

[27] Although the passage set forth on page 23 of the Brief of Appellant recites that it is memorialized in the record at 11RR253, this passage is actually memorialized in the record at 11RR65 lines 14-17.

contained within less than forty lines of trial record, and much of this brief passage is interspersed with objections, responses thereto, and rulings. 11RR23 line 3 – 24 line 12. This relationship was in no way made a focal point of the State's presentation of its case or its argument. As discussed above, the entirety of the record is to be considered in conducting harm analysis. Coble, 330 S.W.3d 253. Given Appellant's own admission that she struck, stomped and kicked the victim while he lay helpless on the floor, it is clear that the 'prior relationship' testimony had no appreciable effect on the jury in its deliberations. 10RR193-196, 207; State's Exhibit 52. Even erroneous admission of such testimony would have had no adverse affect on Appellant's substantial rights; thus, Appellant is not in any event entitled to reversal on this claim. *See*, Coble, 330 S.W.3d 253; Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002); Johnson v. State, 967 S.W.2d 410 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b).

3.) Testimony regarding the relationship between Appellant and her step-sister (Appellant's Issue 4)

This claim centers on testimony from Ruby Olguin, daughter of Zulema Delgado, regarding Ms. Olguin's relationship between her and Appellant.

The trial court did not err in its ruling admitting the challenged evidence because the evidence fell within the parameters of Art. 38.36 in that it went, albeit indirectly, to the relationship between accused and victim; the nature of a relationship between a person's daughter and the daughter of the persons' wife necessarily affects the relationship between the person and his daughter. Moreover, evidence of the jealousy of Appellant toward her stepsister was an apparent source of the friction between Appellant and her father. 11RR61-63. Such evidence is properly admitted pursuant to the 'previous relationship' and 'condition of mind' provisions of Art. 38.36.

Should error be found, reversal is nonetheless not warranted. Appellant makes no showing that this evidence had more than a *de minimis* effect on the jury's deliberations, if it indeed had any effect at all. This relationship was in no way made a focal point of the State's presentation of its case or its argument. As discussed above, the entirety of the record is to be considered in conducting harm analysis. Given Appellant's own admission that she struck, stomped and kicked the victim while he lay helpless on the floor, it is clear that the 'prior relationship' testimony had no appreciable effect on the jury in its deliberations. 10RR193-196, 207; State's Exhibit 52. Even erroneous admission of such testimony would have had no adverse affect on Appellant's substantial rights; thus, Appellant is not in

any event entitled to reversal on this claim. *See*, Coble, 330 S.W.3d 253; Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002); Johnson v. State, 967 S.W.2d 410 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b).

4.) Testimony regarding the relationship between Appellant and the victim

a.) Testimony concerning their treatment of one another (Appellant's Issue 5)

Appellant raises no complaint about the evidence regarding the victim's feelings toward or treatment of Appellant; rather, she focuses entirely on the evidence of her extremely disrespectful treatment of the victim, her father.[28]

Taking over every aspect of her father's life was the apparent purposes of Appellant's treatment of her father and others. As such, this evidence clearly falls within the 'relationship between accused and deceased' provisions of Art. 38.36. The trial court did not err in admitting such evidence.

If, however, it is found that the trial court erred in admitting such evidence, any harm flowing therefrom does not warrant reversal of conviction. As discussed

---

[28] Appellant consistently referred to the victim's wife, her step-mother, as a 'bitch', telling the victim to 'quit being a faggot, have the balls, and control your bitch.' 10RR299-301, 315-316; 11RR76-77.

40

above, the entirety of the record is to be considered in conducting harm analysis. Coble, 330 S.W.3d 253. Given Appellant's own admission that she struck, stomped and kicked the victim while he lay helpless on the floor, it is clear that the 'prior relationship' testimony had no appreciable effect on the jury in its deliberations. 10RR193-196, 207; State's Exhibit 52. Even erroneous admission of such testimony would have had no adverse affect on Appellant's substantial rights; thus, Appellant is not in any event entitled to reversal on this claim. *See*, Coble, 330 S.W.3d 253; Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002); Johnson v. State, 967 S.W.2d 410 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b).

b.) Social media posts (Appellant's Issue 6)

The State of Texas maintains that the trial court did not err in its ruling admitting the challenged evidence. This evidence, in which Appellant expressed her feelings for and toward her father, was clearly within the parameters of Art. 38.36.

Assuming *arguendo* without conceding that the trial court erred in this ruling, such error does not in any event warrant reversal of conviction. In essence, these posts presented the 'public presence' of Appellant as to her claimed positive feelings toward her father, the victim of the killing. The expressions therein are innocuous. If anything, the expressions of her wish to bring her father into faith served to

strengthen Appellant's position in defense rather than to adversely affect her substantial rights. As discussed above, the entirety of the record is to be considered in conducting harm analysis. Coble, 330 S.W.3d 253. Given Appellant's own admission that she struck, stomped and kicked the victim while he lay helpless on the floor, it is clear that the 'prior relationship' testimony had no appreciable effect on the jury in its deliberations. 10RR193-196, 207; State's Exhibit 52. Even erroneous admission of such evidence would have had no adverse affect on Appellant's substantial rights; thus, Appellant is not in any event entitled to reversal on this claim. *See*, Coble, 330 S.W.3d 253; Motilla v. State, 78 S.W.3d 352 (Tex. Crim. App. 2002); Johnson v. State, 967 S.W.2d 410 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b).

C. Testimony regarding removal of the victim's motorcycle from his property (Appellant's Issue 2)

This complaint centers on testimony that Appellant reportedly directed a friend to take the victim's motorcycle from his property days after the killing. 10RR316-317.

The trial court did not err in its ruling admitting the challenged testimony. Taking control of Appellant's property was apparently an aim of Appellant.[29] Evidence of post-killing actions that tend to show motive is relevant. *See,* <u>Pondexter v. State</u>, 942 S.W.2d 577 (Tex. Crim. App. 1996, *cert. denied*).

As discussed above, the entirety of the record is to be considered in conducting harm analysis. Given Appellant's own admission that she struck, stomped and kicked the victim while he lay helpless on the floor, it is clear that the 'prior relationship' testimony had no appreciable effect on the jury in its deliberations. 10RR193-196, 207; State's Exhibit 52. Assuming without conceding that Appellant's objection as to a question about the disposition of the motorcycle on grounds of relevance should have been sustained, Appellant makes no showing that such error in any way affected her substantial rights; thus, Appellant is not in any event entitled to reversal on this claim. <u>Coble v. State</u>, 330 S.W.3d 253 (Tex. Crim. App. 2010, *cert denied*); <u>Motilla v. State</u>, 78 S.W.3d 352 (Tex. Crim. App. 2002); <u>Johnson v. State</u>, 967 S.W.2d 410 (Tex. Crim. App. 1998); Tex. R. App. P. 44.2(b).

---

[29] When Zulema Delgado went to the house after the killing, Appellant told authorities "that she was going to stay there because it was her father's house and that I was -- that – that she said that bitch has to get out of here because it's my father's house." 10RR315.

D. Evidence of delay in summoning emergency assistance (Appellant's Issue 7)[30,31]

Appellant posits that evidence of the two-hour delay between the time of the fatal altercation and the time Appellant called 911 to obtain medical assistance should not have been admitted because, in her view, as failing to secure necessary assistance was not pled as a potential means of Appellant's death, this conduct was an 'extraneous bad act' of which the State was required to give notice of its intent to adduce evidence. Brief of Appellant, pp.'s 31-32.

The events of that night in the victim's home occurred in one ongoing episode, starting with the physical altercation and ending with the transport of the victim from the home by ambulance. "Same transaction" evidence has been defined as evidence of other offenses connected to the offense for which the accused stands charged. Wyatt v. State, 23 S.W.3d 18 (Tex. Crim. App. 2000, *cert. denied*); *see, also,* Greene v. State, 287 S.W.3d 277 (Tex. App.--Eastland. 2009, *pet. ref'd*). The

---

[30] Although it is ambiguous as to whether the 'running objection' of Appellant made before date of trial encompassed both evidence *and* argument, the State of Texas will not herein base its argument regarding this claim on a premise Appellant has failed to preserve error. 8RR6-8.

[31] Appellant complains of allegedly improper admission of evidence, but makes no record reference to the evidence subject of the challenge and dedicates her entire argument not to an evidentiary ruling but rather to claims connected with the closing argument of the State.

opinion of the Eastland Court of Appeals in <u>Hodge v. State</u>, 940 S.W.2d 316 (Tex. App.—Eastland 1997, *pet. ref'd*) is enlightening:

> The court in <u>Rogers v. State</u>, 853 S.W.2d 29 (Tex.Cr.App. 1993), recognized that same transaction contextual evidence may arise at the time of arrest just as res gestae evidence had in the past been characterized as "res gestae of the arrest." Here, after killing the two victims, appellant fled the scene of the murders. Appellant's flight was admissible on the issue of his guilt. The automobile in which appellant was riding was stopped by Corsicana police officers because of a stolen car report. The jury's understanding of the two murders would have been "impaired or clouded" without the evidence of flight and facts surrounding the stopping of the stolen automobile. Therefore, we hold that the challenged evidence was proper "same transaction contextual evidence."
> <u>Hodge</u>, 940 S.W.2d at 318-319 (internal citations omitted).

Appellant herself, by her concession in her Brief that "[U]nder Texas law, Appellant could potentially have been charged with failure to report a felony under Texas Penal Code 38.171 for her failure to call the police", tacitly acknowledges that her post-killing actions at issue are within the definition of 'same transaction.' Brief of Appellant, page 34.

By its own terms, the controlling evidentiary rule does not require notice of intent to introduce evidence of other crimes, wrongs or acts that arise in the same

45

transaction as the conduct for which the accused is charged. Tex. R. Evid. 404(b); *see*, <u>Saenz v. State</u>, 2009 Tex. App. Lexis 2254 (Tex. App.—Corpus Christi 2009, *no pet.*)(*memorandum opinion—not designated for publication*). Thus, the State was not required to give notice of intent to introduce the challenged evidence.

Appellant also posits that the evidence should have been precluded upon application of governing evidentiary rules. Essentially, Appellant argues that, as there was no evidence adduced that the delay contributed in and of itself to Appellant's death, evidence thereof was wholly irrelevant; or that, in the alternative, such evidence should have been excluded upon application of the 'balancing test' under Rule 403 of the Texas Rules of Evidence. Tex. R. Evid. 401, 403. The evidence of the time delay was relevant in that it went to establishing consciousness of guilt. On a prior occasion on which the victim was in distress, Appellant immediately took him to a hospital. 11RR209-210. The delay on the night of the killing is evidence that Appellant, knowing she had grievously harmed a helpless man, was trying to, in the words of the trial prosecutor, 'figure out what she was going to say.' 11RR209-210, 273-274. *See,* <u>Smith v. State</u>, 2014 Tex. App. Lexis 13705 (Tex. App.—San Antonio 2014, *no pet.*)(*memorandum opinion—not designated for publication*)(defendant's delay in notifying the child victim's mother of having injured the child was an indicator of consciousness of guilt). Had

46

Appellant had a clear conscience, she would have immediately sought assistance for her father.

Appellant's claims regarding admission of the subject evidence are without merit; it is beyond dispute that the State was permitted to make reference to all evidence in its closing argument and, thus, even timely and adequate objection to argument referring to the evidence would properly be overruled. *See, e.g.* Gallo v. State, 239 S.W.3d 757 (Tex. Crim. App. 2007, *cert. denied*)(summation of the evidence is among the proper areas of jury argument).

## CONCLUSION

Appellee respectfully submits, for the reasons set forth herein, that the Judgment of the trial court should in all respects be affirmed.

## PRAYER

Wherefore, premises considered, the State of Texas prays the Court affirm the Judgment of the trial court.

Respectfully submitted,

___/s/ Glenn W. Devino____
Glenn W. Devino
Assistant Criminal District Attorney
100 N. Closner, 4th floor
Edinburg TX 78539
Telephone 956-318-2300
Facsimile 956-380-0407
State bar no. 24012525
glenn.devino@da.co.hidalgo.tx.us

**Certificate of Compliance**

I hereby certify that this computer-generated document has the following number of words: 9,648 words.

___/s/ Glenn W. Devino____
Glenn W. Devino
Assistant Criminal District Attorney
100 N. Closner, 4th floor
Edinburg TX 78539
Telephone 956-318-2300
Facsimile 956-380-0407
State bar no. 24012525
glenn.devino@da.co.hidalgo.tx.us

**Certificate of Service**

I hereby certify that I have sent a true and correct copy of the foregoing Brief of Appellee to Appellant, Alicia Delgado, which Brief is electronically filed, by serving Appellant therewith through the electronic filing manager to her attorney, Johnathan Ball, on this the 11th day of September, 2015.

___/s/ Glenn W. Devino____
Glenn W. Devino
Assistant Criminal District Attorney
100 N. Closner, 4th floor
Edinburg TX 78539
Telephone 956-318-2300
Facsimile 956-380-0407
State bar no. 24012525
glenn.devino@da.co.hidalgo.tx.us